UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| ABI ASSAYE, | CIV. NO. 17-00495 DKW-KSC |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS** |
| vs. | |
| UNITED AIRLINES, INC., | |
| Defendant. | |

Assaye asserts claims for retaliation, race and disability discrimination against United, his former employer. Before the Court is United's Motion to Dismiss ("MTD"; Dkt. No. 5) the Complaint Filed September 7, 2017.

For the reasons set forth below, the Court GRANTS IN PART the MTD with leave to amend only Count I.

## BACKGROUND

Assaye, who is African American, worked for United from October 22, 2007 until his termination on January 27, 2016. Pigozzi Decl., Ex. A [Compl.] ¶¶ 10, 24, Dkt. No. 1-2.

While employed by United, first as a "Reservation Sales Agent," and then in United's Customer Care Department (Compl. ¶¶ 10, 11), Assaye alleges that he "developed a disability," for which he "requested a reasonable accommodation"

1

(Compl. ¶ 13).  According to Assaye, United not only failed to provide such an accommodation, but also failed to "engage[] in an interactive process to accommodate" Assaye in the workplace.  Compl. ¶ 15.  Assaye further claims that United "discriminated against [him] based upon his race" (Compl. ¶ 16) and fired him in retaliation for his requests for accommodation and complaints of discrimination (Compl. ¶ 15).

In March 2016, Assaye filed a Charge of Discrimination ("2016 Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Hawaiʻi Civil Rights Commission ("HCRC").[1]  *See* Pigozzi Decl., Ex. B [2016 Charge] at 2–3, Dkt. No. 5-4.  The EEOC investigated Assaye's claims but ultimately closed its file on May 5, 2017, making clear that in doing so, it was "not certify[ing] that [United] is in compliance with the statutes."  *See* Compl., Ex. B [Dismissal & Notice of Rights] at 1, Dkt No. 8 at 3.  Assaye received a right to sue letter from the EEOC on or about May 10, 2017 and a right to sue letter from the HCRC on August 17, 2017.  Compl. ¶ 8.

Assaye initiated this action on September 7, 2017 in the Circuit Court of the First Circuit, State of Hawaiʻi, Civil No. 17-1-1450-09 KKH, claiming statutory violations under Hawaiʻi Revised Statutes ("HRS") § 378-2 in addition to public

---

[1]The documents are signed and dated March 9, 2016, and they are stamped as "received" by the respective agencies on March 14, 2016.

policy violations.  Specifically, the Complaint (Dkt. No. 1-2) identifies three

causes of action—discriminatory acts on the basis of disability and race under HRS

§ 378-2(1)(a) ("Count I"; Compl. ¶¶ 21–22); retaliatory termination under HRS

§ 378-2 ("Count II"; Compl. ¶¶ 23–24), and for "termination . . . done in violation

of public policy" ("Count III"; Compl. ¶¶ 25–26).  In its prayer for relief, the

Complaint requests "special damages for lost income and lost earning capacity,"

"consequential damages," "injunctive relief for reinstatement at his job with

[United]," and an award of reasonable attorneys fees and costs.  Compl. at 4–5,

Dkt. No. 1-2.

United removed the action to this Court on October 3, 2017 based on

diversity.  Notice of Removal ¶¶ 4, 5, Dkt. No. 1 (citing 28 U.S.C. §§ 1332, 1441).

Before the Court is United's October 9, 2017 Motion to Dismiss the Complaint

Filed September 17, 2017.  MTD, Dkt. No. 15.  Following a hearing on the MTD

on March 2, 2018 (*see* EP, Dkt. No. 34), the Court took matters under advisement.

The instant disposition follows.

## LEGAL STANDARDS

### *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

A federal court must generally "satisfy itself of its jurisdiction over the

subject matter before it considers the merits of a case," *Ruhrgas AG v. Marathon

Oil Co.*, 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94–95 (1998)). If the court determines at any time that it lacks

subject matter jurisdiction, the court must dismiss the action. *Billingsley v.*

*Comm'r of Internal Revenue Serv.*, 868 F.2d 1081, 1085 (9th Cir. 1989) ("[T]he

court is under a continuing duty to dismiss an action whenever it appears that the

court lacks jurisdiction.") (quoting *Augustine v. United States,* 704 F.2d 1074,

1077 (9th Cir. 1983)).

A court's subject matter jurisdiction may be challenged under Federal Rule

of Civil Procedure ("FRCP") 12(b)(1). The parties may also raise the issue of

subject matter jurisdiction at any time under FRCP 12(h)(3). *Augustine,* 704 F.2d

at 1075 n.3.

On a Rule 12(b)(1) motion to dismiss, "the district court is ordinarily free to

hear evidence regarding jurisdiction and to rule on that issue prior to trial,

resolving factual disputes where necessary." *Id*. at 1077 (citing *Thornhill Publ'g*

*Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)); *see also McCarthy v.*

*United States*, 850 F.2d 558, 560 (9th Cir. 1988). Where the court considers

evidence outside the pleadings for this purpose, "[n]o presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional

claims." *Id*. (citing *Thornhill*, 594 F.2d at 733). "Once the moving party

[converts] the motion to dismiss into a factual motion by presenting affidavits or

other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). However, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35; Wright & Miller, Fed. Prac. & Proc. § 1350, at 558)) (explaining further that trial courts making such jurisdictional rulings "should employ the standard applicable to a motion for summary judgment" (citing *Thornhill*, *supra*)).

*Motion to Dismiss for Failure to State a Claim*

The Court may dismiss a complaint under FRCP 12(b)(6) for "failure to state a claim upon which relief can be granted" when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, a plaintiff is required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP 8(a)(2). *Id.* at 677, 679 (explaining that the Federal Rules "do[] not require 'detailed factual allegations,' but [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Courts considering a motion under Rule 12(b)(6) are generally limited to reviewing the contents of the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). Courts may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th

Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Heartland Payment Sys., Inc. v. Cent. Pac. Bank*, 2012 WL 488107, *2 (D. Haw. Feb. 13, 2012).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (explaining that the construed-as-true/light-most-favorable tenet "is inapplicable to legal conclusions"); *Sprewell*, 266 F.3d at 988; *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice, nor must it assume that allegations contradicted by the exhibits attached to the complaint are true. *Sprewell*, 266 F.3d

at 988.  As the Ninth Circuit has explained, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

*Leave to Amend*

Under Rule 15(a)(2) of the FRCP, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (explaining that "the underlying purpose of [FRCP] Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities") (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).  Further, the Ninth Circuit has explained that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962); *Erlich v. Glasner*, 352 F.2d 119, 122 (9th Cir. 1965)).  Nonetheless, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc." *Mayes v. Leipziger*, 729 F.2d 605, 608

(9th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

With these standards in mind, the Court turns to United's MTD.

## DISCUSSION

## I.   Discrimination Under HRS § 378-2(a)(1)(A) (Count I)

Under HRS § 378-2, it is an "unlawful discriminatory practice . . . [f]or any

employer . . . to discharge from employment, or otherwise to discriminate against

any individual . . . in the terms, conditions, or privileges of employment" on the

basis of "race . . , color . . , [or] disability."  HRS § 378-2(a)(1)(A).  Assaye alleges

that United engaged in two types of discrimination prohibited by this statute—

race-based discrimination, and disability/reasonable accommodations

discrimination—and each is discussed below.

### A.   *Race Discrimination*

A claim of race discrimination under HRS Chapter 378 is governed by the

same test used by the federal courts in Title VII cases.  *Jackson v. Foodland Super*

*Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1139 (D. Haw. 2013) (citing *Schefke v. Reliable*

*Collection Agency, Ltd.*, 32 P.3d 52, 69–70 (Haw. 2001)); *cf. Kosegarten v. Dep't*

*of the Prosecuting Attorney*, 892 F. Supp. 2d 1245, 1261 (D. Haw. 2012) (holding

that, in interpreting HRS § 378-2, "federal case law interpreting Title VII is

persuasive, but not controlling") (citing *Arquero v. Hilton Hawaiian Vill. LLC*, 91

P.3d 505, 511–12 (Haw. 2004)).  A plaintiff may establish a prima facie case of discrimination, either "by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant," *Jackson*, 958 F. Supp. 2d at 1139 (citing *McGinest v. GTE Serv. Corp*, 360 F.3d 1103, 1122 (9th Cir. 2004)), or by establishing the four elements of the *McDonnell-Douglas* test—"(1) []he belongs to a protected class; (2) []he was qualified for the position; (3) []he was subjected to an adverse employment action; and (4) similarly situated [employees] were treated more favorably," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  *See also Hac v. Univ. of Haw.*, 73 P.3d 46, 55 (Haw. 2003) ("This court has adopted the McDonnell Douglas analysis in HRS § 378–2 discrimination cases.") (citing, *inter alia*, *Schefke*, 32 P.3d at 85).  Here, Assaye does not allege that he can "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" United.  *Jackson*, 958 F. Supp. 2d at 1139.  As a result, the sufficiency of this claim is analyzed under the four-prong, *McDonnell-Douglas* test.[2]

---

[2]Generally, courts have held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous."  *Furukawa v. Honolulu Zoological Soc'y*, 936 P.2d 643, 649 (Haw. 1997) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) (citing *Sischo-Nownejad v. Merced Cmty. College Dist.*, 934 F.2d 1104, 1108 (9th Cir. 1991)).

### 1. *Protected Class*

Assaye alleges that United violated the HRS by engaging in "discriminatory acts towards [him] . . . on the basis of . . . race." Compl. ¶ 22, Dkt. No. 1-2. He identifies his race as "African American." Compl. ¶ 16. As such, Assaye has alleged that he is a member of a protected class. *See Jackson*, 958 F. Supp. 2d at 1139.

### 2. *Qualified for the Position/Satisfactory Job Performance*

In support of the second prong, Assaye points to his allegation in the Complaint that "Plaintiff satisfactorily performed his duties." Compl. ¶ 12, Dkt. No. 1-2. He further asserts that "[t]he analysis of whether he was qualified to do the essential duties of his job can be made throughout discovery and by the finder of fact at trial." Opp'n at 9, Dkt. No. 31. United does not appear to dispute this element for purposes of its MTD.

### 3. *Adverse Employment Action*

Assaye's employment with United was terminated on January 27, 2016. Compl. ¶ 24, Dkt. No. 1-2. Termination is cognizable as an adverse employment action for purposes of Assaye's discrimination claim. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a

negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion.")); *Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1129 n.16 (D. Haw. 2008) (citing *Crosby v. State Dep't of Budget & Fin.*, 876 P.2d 1300, 1309 (Haw. 1994), *cert. denied*, 513 U.S. 1081 (1995)).

### 4. *Treatment of Similarly Situated Employees*

"The central focus of the inquiry in a case" regarding allegations of intentional discrimination "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furukawa*, 936 P.2d at 649 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). In order to establish discrimination based on the disparate treatment of "similarly situated" employees, Assaye would need to show that "all of the relevant aspects of his employment situation were similar to those employees with whom he seeks to compare his treatment." *Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 58 P.3d 1196, 1208 (Haw. 2002) (quoting *Furukawa*, 936 P.2d at 650). The Supreme Court of Hawaiʻi has stated that "[g]enerally, similarly situated employees are those who are subject to the same policies and subordinate to the same decision-maker as the plaintiff." *Id.*; *but cf.*, *Jackson*, 958 F. Supp. 2d at 1140 ("Individuals are similarly situated when they have similar jobs and display similar conduct.") (citing *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)).

United argues that Assaye does not describe how he was treated differently than those he asserts were "similarly situated." *See* Mem. in Supp. at 11–12, Dkt. No. 5-1 (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Mahoe v. Operating Eng'rs Local Union No. 3*, 2013 WL 5447261, *12–13 (D. Haw. Sept. 27, 2013)). But Assaye has alleged that he was treated differently when United "terminat[ed] him, while not terminating similarly situated non African American[]" employees. Compl. ¶ 17. That seems to address the inadequacy cited by United.

Furthermore, to the extent United complains that the Complaint does not specifically identify the similarly situated employee(s) on which Assaye intends to rely, Assaye identified the name of that individual—Pat Coller—in his 2016 Charge. The 2016 Charge (Dkt. No. 5-4) is incorporated by reference into the Complaint via paragraph 7 ("Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission (EEOC) and Hawaii Civil Rights Commission (HCRC) on March 14, 2016."). Nothing more is required.[3]

## B.   *Disability/Reasonable Accommodations Discrimination*

In order to establish a prima facie case of disability discrimination under HRS § 378-2, "a plaintiff has the burden of establishing that (1) he or she is an

---

[3]Nor is the Court convinced that the identity of at least one similarly situated employee must be pled to survive a motion to dismiss. Certainly, none of the cases cited by United so hold.

individual with a 'disability' within the meaning of the statute; (2) he or she is

otherwise qualified to perform the essential duties of his or her job with or without

reasonable accommodation; and (3) he or she suffered an adverse employment

decision because of his or her disability."  *French v. Haw. Pizza Hut, Inc.*, 99 P.3d

1046, 1051 (Haw. 2004) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471,

477–78, 481 (1999), thereby adopting its test for establishing a prima facie case of

disability discrimination under the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101), *recon. denied*, 101 P.3d 651.  Assaye's pleadings are insufficient

to establish the existence of a disability, and therefore only the first of these

necessary elements is examined below.

Section 378-1 of the HRS defines *disability* as "the state of having a physical

or mental impairment, which substantially limits one or more major life activities."

"Hence, a 'physical or mental impairment' is a disability if the impairment

'substantially limits' a 'major life activity.'"  *French*, 99 P.3d at 1051.  Courts in

Hawaiʻi apply a three-part test to determine whether a plaintiff meets this disability

requirement.  *See Bitney v. Honolulu Police Dep't*, 30 P.3d 257, 265 (Haw. 2001)

(deriving test from *Epstein v. Kalvin-Miller Int'l, Inc.*, 100 F. Supp. 2d 222, 225–

26 (S.D.N.Y. 2000)).  First, the court considers "whether a plaintiff's conditions

are 'physical or mental impairments.'" *French*, 99 P.3d at 1052 (quoting *Bitney*, 30

P.3d at 266) (explaining further that "physical or mental impairments" is defined

by both Hawai'i Administrative Rules § 12–46–182(h)(1) and 29 C.F.R.

§ 1630.2(h)(1) as "[a]ny physiological disorder, or condition, cosmetic

disfigurement, or anatomical loss affecting one or more of [a subsequent list of]

body systems").  In order to make this determination, the court need not be

informed of the "name or diagnosis of the impairment the person has," but rather,

the court requires information regarding "the effect of that impairment on the life

of the individual."  *Id*. (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534

U.S. 184, 198 (2002)).  Second, "[t]he trial court must . . . consider whether the life

activities allegedly affected by the impairment are 'major' life activities under the

ADA."  *Id.* (quoting *Bitney*, 30 P.3d at 266) (internal brackets and quotation marks

omitted).  And third, "the trial court must consider whether the plaintiff's

impairment 'substantially limits' the major life activity he or she has identified."

*Id.* (internal brackets and quotation marks omitted).

Here, Assaye alleges that "[d]uring the course of [his] employment, he

developed a disability," and "[a]s a result, [he] requested a reasonable

accommodation" that was never provided.  Compl. ¶¶ 13, 14, Dkt. No. 1-2.

Assaye also alleges that United both failed to "engage[] in an interactive process to

accommodate [him] at work" (Compl. ¶ 14), and that United "fired [him] after he

requested a reasonable accommodation and after he complained about

discrimination" (Compl. ¶ 15).[4]  Although Assaye may be correct in asserting that

"there is no Hawaii case which says he has to identify the specific disability [or]

the reasonable accommodations" at this time (Opp'n at 9, Dkt. No. 31), neither the

2016 Charge (Dkt. No. 5-4) nor the language in the Complaint (Dkt. No. 1-2)

sufficiently identifies or describes his alleged impairment, how that impairment

affects his life, or the extent to which that impairment affects his life.  These

omissions mean Assaye's complaint does not adequately allege a "disability"

under Hawaii law, *see French*, 99 P.3d at 1053 (citations omitted), and therefore

does not state a disability discrimination claim, as required by FRCP 12(b)(6).

## II.     Retaliation (Count II)

In Count II, Assaye alleges that United terminated him on January 27, 2016

"in retaliation for [his] complaint of discrimination and in violation of Section 378-

2 HRS."[5]  Compl. ¶ 24, Dkt. No. 1-2.  United attacks Count II on two grounds (*see,

e.g.*, Mem. in Supp. at 12–16, Dkt. No. 5-1), each of which is independently

sufficient to grant the MTD.

---

[4]Assaye's 2016 Charge similarly states that "[d]uring my termination review process,
Respondent was notified about my disability but did not offer me a reasonable accommodation to
retain me as a Customer Care Agent."  *See* 2016 Charge at 2 ¶ I, Dkt. No. 5-4.

[5]In Hawai'i, it is an "unlawful discriminatory practice . . . [f]or any employer . . . to discharge,
expel, or otherwise discriminate against any individual because the individual has opposed any
practice forbidden by this part or has filed a complaint . . . respecting the discriminatory practices
prohibited under this part . . . ."  HRS § 378-2(a)(2).

A.    ***Exhaustion of Administrative Remedies***

1.    *Legal Framework*

To establish retaliation under HRS § 378-2, "a plaintiff must meet the same elements as are required for Title VII." *Hale v. Haw. Publ'ns, Inc.*, 468 F. Supp. 2d 1210, 1231 (D. Haw. 2006); *accord Gonsalves*, 58 P.3d at 1209 (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). Title VII requires a plaintiff to exhaust his or her administrative remedies before filing a civil action against an employer. To do this, the plaintiff must, among other things: (1) file a complaint with the EEOC within 300 days of the last alleged unlawful employment practice, *EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in [Hawai'i] because Title VII extends the 180-day period to 300 days if filed in a 'worksharing' jurisdiction.") (citing 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(4)(ii)(A); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1244 (9th Cir. 2010)), and (2) timely institute his or her action "within ninety days from the issuance of the right to sue letter by the EEOC," *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986) (citing 42 U.S.C § 2000e-5(f)(1)), *as amended by* 815 F.2d 570 (9th Cir. 1987).

By fulfilling these exhaustion requirements, the Title VII plaintiff "afford[s] the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b) (requiring

charges to be "in writing under oath or affirmation," and stating that the EEOC "shall serve notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee within ten days")), *as amended* (Feb. 20, 2002). The purpose of this administrative charge requirement is twofold—"giving the charged party notice of the claim[6] and 'narrowing the issues for prompt adjudication and decision.'" *Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)) (brackets and additional citations omitted).

EEOC complaints are liberally construed. *B.K.B.*, 276 F.3d at 1103 ("We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint[.]") (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975), *abrogated on other grounds by Laughon v. Int'l Alliance of Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001); *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989)). Nonetheless, in *B.K.B.*, the Ninth Circuit noted that

---

[6]"[T]he relevant inquiry is not whether the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'" *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (quoting *President v. Vance*, 627 F.2d 353, 361 (D.C. Cir. 1980)); *cf. Coleman v. Duke*, 867 F.3d 204, 210 (D.C. Cir. 2017) (stating that the test for determining whether a plaintiff has administratively exhausted his claims of discrimination is whether he "timely provide[d] the [EEOC and HCRC] with 'sufficient information to enable the agency to investigate the claim[s]'" (quoting *Artis v. Bernake*, 630 F.3d 1031, 1034–35 (D.C. Cir. 2011)) (additional citation omitted)).

"[a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." 276 F.3d at 1100 (quoting *Green*, 883 F.2d at 1475–76) (internal quotation marks omitted) (citing *Anderson v. Reno*, 190 F.3d 930, 935 (9th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990) ("The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.")); *cf. Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir.1990) ("[C]laims regarding incidents not listed in an EEOC charge may nevertheless be asserted in a civil action if they are like or reasonably related to the allegations in the EEOC charge[.]" (quoting another source) (internal quotation marks omitted)). "But if the two claims are not so closely related that a second administrative investigation would be redundant, the EEOC must be allowed to investigate the dispute before the employee may bring a Title VII suit." *Stache v. Int'l Union of Bricklayers & Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir.1988) (citing, *inter alia*, *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir. 1984)); *cf., e.g.*, *Sosa*, 920 F.2d at 1457 n.2 ("As we have held, all of [plaintiff]'s allegations are sufficiently related on their face, making dismissal at this stage of the proceedings improper.").

> In determining whether a plaintiff has exhausted allegations that [he or] she did not specify in [the] administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B.*, 276 F.3d at 1100 (citing *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (ruling that plaintiff exhausted her claim for discriminatory layoff since that claim had always been a part of the plaintiff's theory of the case, as expressed in her explicit allegations of discriminatory failure to recall and to rehire laid-off female employees)). As such, "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)) (citing *Kaplan*, 525 F.2d at 1359).

2.    *The Charge of Discrimination*

Here, the Charge of Discrimination on which Assaye's complaint (Dkt. No. 1-2) is based was filed with the EEOC on March 14, 2016. 2016 Charge, Dkt. No. 5-4 at 2–3. The pre-printed Charge of Discrimination form directed Assaye to "[c]heck the appropriate box(es)" that describe what the "CAUSE OF DISCRIMINATION [IS] BASED ON," and offered the following choices: "RACE," "COLOR," "SEX," "RELIGION," "NATIONAL ORIGIN/ ANCESTRY," "RETALIATION," "AGE," "DISABILITY," and/or "OTHER

(Specify)." 2016 Charge at 1, Dkt. No 5-4 at 2. Assaye only checked two boxes

on the 2016 Charge—RACE and DISABILITY—signifying the principal theories

underlying his claims. 2016 Charge at 1, Dkt. No. 5-4 at 2. Additionally, the form

asked Assaye to indicate the "DATE DISCRIMINATION TOOK PLACE," and

includes a box for plaintiff to check if the discrimination is a "CONTINUING

ACTION." 2016 Charge at 1, Dkt. No. 5-4 at 2. Assaye listed "01-27-2016" as

both the "earliest" and "latest" act of discrimination, and he did not check the box

indicating that his charge involved a continuing action. *Id.*

As for the factual statement describing the "particulars" of his allegations in

the 2016 Charge, Assaye wrote the following:

> I.     I was hired by the Respondent [(United)] on October 22, 2007, as a Reservation Sales Agent. In 2010, I was transferred from Reservation Sales to the Customer Care Department and worked there until I was terminated on January 27, 2016. During the last five years of working for Respondent, only African-American employees were terminated. I was the latest African-American employee to be terminated. Moreover, all of the African-American employees were denied reinstatement via the termination review process while non-African-American employees, such as Pat Coller, were treated more favorably and retained by Respondent. During my termination review process, Respondent was notified about my disability but did not offer me a reasonable accommodation to retain me as a Customer Care Agent.

> II.     I was not given any reason by Respondent why I was not retained during the termination review process which resulted in my termination on January 27, 2016.

III.    I believe I have been discriminated against because of my race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended[,] and I also believe I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

2016 Charge at 1–2, Dkt. No. 5-4 at 2–3.

Although Assaye did not check the box marked "RETALIATION" on his 2016 Charge, his decision not to do so does not automatically foreclose exhaustion of his retaliation claim. That is because the Court may consider the retaliatory events described in a complaint if those events are so "like or reasonably related to" the allegations in the 2016 Charge that an EEOC investigation of them "could reasonably be expected to grow out of" the EEOC's investigation into the charge. *Vasquez*, 349 F.3d at 645–46 ("Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." (citing *B.K.B.*, 276 F.3d at 1100)). A key consideration in that analysis is whether the remaining claims are "consistent with [Assaye]'s original theory of the case," *BKB*, 276 F. 3d at 1100 (citing *Farmer Bros. Co.*, 31 F.3d at 899), which, here, was discrimination on the basis of race and/or disability.

        3.    *Allegations of Retaliation in the Complaint*

In the Complaint (Dkt. No. 1-2), Assaye notes that "[United] fired [him] after he requested a reasonable accommodation and after he complained about

discrimination" (Compl. ¶ 15), and he argues that "[United]'s discriminatory acts and termination of [Assaye] on January 27, 2016, was in retaliation for [Assaye]'s complaint of discrimination and in violation of Section 378-2 HRS" (Compl. ¶ 24). At the March 2, 2018 hearing on the instant MTD, Assaye argued that his assertions in the "particulars" portion of the 2016 Charge—that only African-American employees had been terminated for the past five years, and that he was given no reason for his non-retention—are sufficiently "like or reasonably related to" the allegations of retaliation in the Complaint. The Court disagrees.

The 2016 Charge says nothing explicit or implicit about retaliation. Moreover, an investigation of a disparate treatment claim by the EEOC would not have reasonably led the EEOC to also investigate retaliation. Among other things, the elements of the claims/theories are different, and the decision-making process relevant to each is different. In short, nothing in the 2016 Charge would have put either the EEOC or United on notice that Assaye intended to pursue a retaliation claim, and nothing in the 2016 Charge would have reasonably led the EEOC's investigation in the direction of retaliation. The Court therefore holds that Assaye failed to exhaust his retaliation claim.

B. *Sufficiency of the Retaliation Claim*

United argues that even if Assaye had exhausted his retaliation claim, that claim, as asserted, fails to satisfy FRCP 12(b)(6). The Court agrees.

To establish a prima facie case of retaliation under HRS § 378-2, a plaintiff must show that "(1) []he reported, complained of, or testified about a discriminatory practice; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the employment action." *Gonsalves*, 58 P.3d at 1209 (citing *Schefke*, 32 P.3d at 70; *Ray*, 217 F.3d at 1240); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008); *accord McGinest*, 360 F.3d at 1124 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995)); *see also Hale*, 468 F. Supp. 2d at 1231. With regard to the causation element of retaliation, the United States Supreme Court "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *accord Gallegher v. San Diego Unified Port Dist.*, 668 Fed. Appx. 786, 787 (9th Cir. 2016). "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citing *Hagans v. Andrus*, 651 F.2d

622, 626 (9th Cir.), *cert. denied*, 454 U.S. 859 (1981); *Meyer v. Cal. & Hawaiian Sugar Co.*, 662 F.2d 637, 639 (9th Cir. 1981)).

Here, as United points out, Assaye did not "explain what the protected activity was and when he complained."  Reply at 7, Dkt. No. 33 (citing *Creamer v. Cty. of Kauai*, No. 16-00648 HG-KJM, at *19–20 (D. Haw. Nov. 30, 2017)). Because Assaye does not identify what protected activity he was engaged in, or when, he cannot establish the requisite causal link between his unnamed protected activity and the termination that he asserts was United's retaliatory act.  *See, e.g.*, *Creamer*, 2017 WL 5904634 at *7 (dismissing retaliation claim with leave to amend where the plaintiff both "failed to state what protected activity he was engaged in" and "also fail[ed] to plead a causal link between the protected activity and the adverse employment action").  Assaye's argument during the March 2, 2018 hearing—that it would have been redundant for Assaye to include the phrase, "therefore I was retaliated against" in his 2016 Charge or in the Complaint—does nothing to address this flaw in the pleadings.

### III.  <u>Violation of Public Policy (Count III)</u>

In Count III of the Complaint, Assaye alleges that "Defendants' termination of Plaintiff was done in violation of public policy."  Compl. ¶ 26, Dkt. No. 1-2. This allegation fails to state a claim.

In *Parnar v. Americana Hotels, Inc.*, the Hawaiʻi Supreme Court established a common-law cause of action through which an individual employee may bring a tort claim against his or her former employer if the employee can prove "that the discharge violates a clear mandate of public policy." 652 P.2d 625, 631 (Haw. 1982). The purpose of a *Parnar* claim is to provide compensation to a plaintiff for wrongful acts that public policy would deem to be compensable, but that the legislature has not provided for remediating under the law. *Shahata v. W Steak Waikiki, LLC*, 721 F. Supp. 2d 968, 987 (D. Haw. 2010) (noting that "[w]rongful termination claims" are usually only raised where "a statutory or other policy does not itself provide for a remedy to enforce the policy" (citing *Griffin*, 654 F. Supp. 2d at 1139–40)), *aff'd*, 494 F. Appx. 729 (9th Cir. 2012). As such, if "the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary." *Ross v. Stouffer Hotel, Co.*, 879 P.2d 1037, 1047 (Haw. 1994) (quoting *Lapinad v. Pac. Oldsmobile–GMC*, 679 F. Supp. 991 (D. Haw. 1988)).

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.

*Parnar*, 652 P.2d at 631.  The plaintiff also bears the burden of identifying the *specific* public policy that was allegedly violated.  *See Abbey v. Haw. Empl'rs Mut. Ins. Co.*, 2010 WL 1541868, *6 (D. Haw. Apr. 15, 2010); *Villiarimo*, 281 F.3d at 1066 ("The plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy." (quoting *Parnar*, 652 P.2d at 631)).

Here, Count III of the Complaint fails to identify any specific public policy that United allegedly violated.  Compl. ¶¶ 25–26, Dkt. No. 1-2.  This omission alone warrants dismissal of the claim.  *See Abbey*, 2010 WL 1541868 at *6; *e.g.*, *Lautiej v. Wal-Mart*, 2010 WL 3429643, *3, *5 (E.D. Cal. Aug. 30, 2010) (dismissing the claim for wrongful termination on the basis of public policy because the plaintiff did "not allege what rules, law, or public policy was violated" and therefore "failed to state a claim," and noting that California law is "not materially different" from Hawai'i law on this subject (internal citations omitted)).

Moreover, even assuming, *arguendo*, that Assaye's identification of "the Hawaii State Constitution, Article 1, sec. 2, rights of individuals,"[7] as the basis of his public policy claim, were sufficient to satisfy his burden, *Abbey*, 2010 WL

---

[7]Article 1, Section 2 of the Hawai'i State Constitution states that "[a]ll persons are free by nature and are equal in their inherent and inalienable rights," among which are the rights to "enjoyment of life, liberty and the pursuit of happiness, and the acquiring and possessing of property.  These rights cannot endure unless the people recognize their corresponding obligations and responsibilities."

1541868 at *6, no *Parnar* claim will lie based on Assaye's conclusory assertion that "[t]erminating [Assaye] under the guise of too much leave used[] establishes a violation" of the rights-of-individuals policy (Mem. in Opp'n to MTD at 15, Dkt. No. 31). For one, his briefing on the instant MTD is the first time Assaye has raised this "too much leave used" issue. Opp'n at 15, Dkt. No. 31. Moreover, Assaye has not pled any facts to establish the amount of leave used, nor has he shown any connection between any alleged protected activity—whether use of leave or some other activity—and his termination from employment. *Cf., e.g.*, *Villiarimo*, 281 F.3d at 1067 n.12 (granting summary judgment on *Parnar* claim based on a wage-and-hour complaint and explaining that, "regardless of whether chapter 387 can form the basis of a *Parnar* action," the plaintiff "failed to show any connection at all" between any alleged protected activity and the termination). As important, there is a broad remedial scheme available for such employment discrimination claims under both Federal law (*e.g.*, Title VII, 42 U.S.C. §§ 2000e, *et seq.*) and state law (*e.g.*, HRS Chapters 387, 388). Indeed, Assaye seeks to avail himself of the state law remedies via the instant action.

Accordingly, the public policy tort described in *Parnar v. Americana Hotels, Inc.,* 652 P.2d 625 (Haw. 1982), does not apply here.

## IV. Leave to Amend

Under FRCP 15(a)(2), once a responsive pleading has been filed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be given "freely . . . when justice so requires." *See Joy v. Hawai'i*, 2008 WL 4483798, *2 (D. Haw. Sept. 26, 2008) ("[T]he underlying purpose of Rule 15(a) . . . was to facilitate decisions on the merits, rather than on technicalities or pleadings.") (quoting *In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004)). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman*, 371 U.S. at 182) (some brackets omitted); *Finazzo v. Hawaiian Airlines*, 2007 WL 1080095, *5 (D. Haw. Apr. 6, 2007) (citing *Foman*, *supra*). In other words, "[w]here there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973).

Here, any amendment would be the first to Assaye's September 7, 2017 Complaint (Dkt. No. 1-2), and there is no evidence before the Court that Assaye's filings represent "a dilatory maneuver in bad faith." *Howey*, 481 F.2d at 1191. Moreover, permitting amendment would not "produce an undue delay in litigation" where there remains ample time for discovery. *See* R. 16 Sched. Order ¶ 12, Dkt. No. 20 (setting discovery deadline for August 31, 2018). Nor has United shown (or even argued) that it will be prejudiced by allowing an amendment. *Cf. Hurn v. Ret. Fund Tr. of Plumbing*, 648 F.2d 1252, 1254–55 (9th Cir. 1981) ("The delay effected by permitting an amendment to the complaint cannot alone justify the denial of leave to amend.").

The only potential obstacle to amendment is futility. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *cf. Cook, Perkiss & Liehe*, 911 F.2d at 247 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citing *Bonanno*, 309 F.2d at 322; *Erlich*, 352 F.2d at 122)). Amendment is futile where the proposed claims are duplicative of existing claims, patently frivolous, and/or legally insufficient. *See Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved . . . that would constitute a valid and

sufficient claim."), *abrogated by Iqbal*, 556 U.S. at 678 (proper pleading standard is now plausibility).

With respect to Count I, leave to amend Assaye's allegations of disability and/or reasonable accommodations discrimination is granted. As discussed above, although the pleadings fail to identify an alleged disability or describe a disabling impairment, while also failing to describe the impact of such a disability and/or impairment on Assaye's life and life activities, *see French*, 99 P.3d at 1053 (citing *Toyota Motor Mfg.*, 534 U.S. at 198), counsel for Assaye has represented that Assaye will correct these deficiencies in any subsequent complaint, if permitted to amend the claim.[8] The Court will permit counsel that opportunity. Accordingly, leave to amend Count I of the Complaint—with respect to the allegation of disability/reasonable accommodations-based discrimination under HRS § 378-2(a)(1)(A)—is GRANTED.

However, because the Court has determined that the claims asserted in Count II (for retaliation under HRS § 378-2(a)(2)) and Count III (for the common-law tort established in in *Parnar*, 652 P.2d 625), each fail as a matter of law, amendment of those claims would be futile. With respect to Count II, counsel conceded at oral argument that it is too late to attempt to exhaust Assaye's

---

[8]Assaye has also represented that "[d]octor's notes and opinions concerning [his] disability and ability to complete his job with reasonable accommodations were given to [United] before filing the EEOC/HCRC administrative charge [on March 14, 2016 (Dkt. No. 5-4 at 2–3)] and instant complaint [on September 7, 2017 (Dkt. No. 1-2)]." Opp'n at 9, Dkt. No. 31.

retaliation claims if the Court determined that exhaustion had not already occurred. That is precisely the situation. With respect to Count III, the Court has found that a *Parnar* claim cannot be stated under the circumstances presented here. Leave to amend is therefore DENIED with respect to Counts II and III. *See Bonin*, 59 F.3d at 845.

Any amended complaint must designate itself as the "First Amended Complaint" and may not incorporate any part of the original Complaint (Dkt. No. 1-2); rather, any specific allegations must be re-written in their entirety. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in unrelated part by Lacey v. Maricopa Cty.*, 693 F.3d 896, 927–28 (9th Cir. 2012) (en banc). The filing deadline for such an amended complaint is 30 days from the date of this Order. Failure to file an amended complaint consistent with the guidance provided by this Order will result in the dismissal of this entire action with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby GRANTS IN PART United's Motion to Dismiss (Dkt. No. 5). Leave to amend the disability discrimination

portion of Count I is GRANTED, while leave to amend Counts II and III is

DENIED.  Plaintiff shall file any amended complaint within 30 days of this Order.

IT IS SO ORDERED.

DATED: April 26, 2018 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

_Assaye v. United Airlines, Inc.,_ CIV. NO. 17-00495 DKW-KSC, **ORDER GRANTING IN PART DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS**